# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **ROBERT WRIGHT,**<br><br>*Plaintiff,*<br><br>v.<br><br>**Officer HARPER, Officer HOLLINS,[1] and Dr. UTLEY,[2]**<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:16-cv-00450-TES-MSH** |

## ORDER ADOPTING UNITED STATES MAGISTRATE JUDGE'S ORDER AND RECOMMENDATION

Before the Court for consideration is the United States Magistrate Judge's Order and Recommendation [Doc. 72], which the Court **ADOPTS** over Plaintiff's timely-filed objections [Doc. 76].

## FACTUAL AND PROCEDURAL BACKGROUND

**A. Factual Background**

Plaintiff's Complaint [Doc. 1] sets forth the following facts. On October 30, 2014, Plaintiff suffered injuries to his face and jaw when he was attacked by a fellow inmate at

---

[1] The filings in this case refer to Defendant Officer Hollins as both "Hollins" and "Hollis." For purposes of this Order, the Court uses "Hollins" as designated on the Court's docket.

[2] In accordance with the Court's previous Order [Doc. 22], the Court changed the case-style to reflect the defendants remaining after the Court's adoption of the United States Magistrate Judge's first Report and Recommendation [Doc. 14].

Dooly State Prison. [Doc. 1, at 10]. Plaintiff alleges that, following this incident, he received inadequate medical and dental treatment from which he continues suffer. [Doc. 1, at 10-12].

Specifically, Plaintiff contends that Defendants Harper and Hollins, officers who transported him to and from Taylor Regional Medical Center following the attack, refused to allow an emergency room doctor to treat his broken jaw and placed him in a segregation cell without further medical attention. [Doc. 1, at 11].[3] Plaintiff also asserts that Defendant Utley, the Dooly State Prison dentist to whom Plaintiff was referred by several medical professionals, failed to acknowledge or treat his subsequent dental problems. [Doc. 1-1, at 14].

**B. Procedural Background**

Plaintiff filed this § 1983 action on October 17, 2016, claiming that Defendants' deliberate indifference to his medical needs violated the Eighth Amendment prohibition of cruel and unusual punishment. [Doc. 1-1, at 1-12].

On April 25, 2018, the Magistrate Judge issued rulings and recommendations regarding the parties' flurry of submissions. The Order [Doc. 72] denied Plaintiff's pending motions for appointment of counsel [Docs. 33, 62], motion to declare SOP 227.06 unconstitutional [Doc. 63], and discovery motions [Docs. 31, 32, 59].

---

[3] Prison officials eventually transferred Plaintiff to Augusta State Medical Prison, where he underwent surgery to remove several teeth and implant a metal plate in his jaw. [Doc. 1, at 10].

Given Defendant Utley's failure to file an answer, both parties submitted documents relating to Defendant Utley's default.[4] [Docs. 48, 52, 55, 56]. The Magistrate Judge denied Plaintiff's Motion for Default Judgment [Doc. 56], granted Defendant Utley's Motion to Set Aside Default [Doc. 55], and granted Plaintiff's "Motions for Claims Against Defendant Utley to Go Forward" [Docs. 48, 52]. Finally, the Magistrate Judge recommended that Defendants Harper and Hollins' Motion to Dismiss [Doc. 25] be granted. [Doc. 72, at 8-12]. Shortly thereafter, Plaintiff filed a timely Objection [Doc. 76] to the Magistrate Judge's findings; as such, the Court reviews the Order and Recommendation [Doc. 72] *de novo*. *See* 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

I. **Plaintiff's Motions**

The Court **ADOPTS** the Order of the Magistrate Judge [Doc. 72] with regards to Plaintiffs various motions [Docs. 31, 32, 33, 59, 62, 63].

**A. Plaintiff's Motions to Appoint Counsel [Docs. 33, 62]**

The Court agrees with the Magistrate Judge's denial of Plaintiff's motions requesting appointment of counsel [Docs. 33, 62]. While district courts may appoint attorneys to represent indigent litigants, prisoners raising civil rights claims, as in § 1983 actions, have no absolute constitutional right to counsel. *See* 28 U.S.C. § 1915(e)(1);

---

[4] On December 4, 2017, the Clerk made an entry of default as to Defendant Utley.

3

*Delguidice v. Primus*, 679 F. App'x 944, 946 (11th Cir. 2017) (citing *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987)). Accordingly, appointment of counsel is a privilege entrusted to the Court's discretion and justified only by "exceptional circumstances."[5] *Delguidice*, 679 F. App'x at 946; *see Sims v. Nguyen*, 403 F. App'x 410, 414 (11th Cir. 2010).

Here, Plaintiff fails to demonstrate the existence of exceptional circumstances necessitating appointment of counsel. In his Objection [Doc. 76], Plaintiff contends that, with an attorney, he could access his medical file, avoid limitations on indigent postage, and otherwise "have a chance" at prevailing on his claims. [Doc. 76, at 1-2].[6] However, Plaintiff has proved capable of adequately presenting his case without an attorney. As his filings reveal, Plaintiff sets forth the essential factual allegations underlying his claims, as well as the applicable legal doctrines governing the dispute. *See Delguidice*, 679 F. App'x at 947 (no exceptional circumstances existed when Plaintiff's filings alleged relevant facts and referenced applicable law); [Doc. 1, at 10-12; Doc. 1-1, at 1-12].

---

[5] Exceptional circumstances include "the presence of facts or legal issues which are so novel or complex as to require the assistance of a trained practitioner." *Sims*, 679 F. App'x at 946. Courts also examine whether the litigant is in a position to adequately investigate his case, and whether the case presentation will involve conflicting testimony, thus requiring skill in presenting evidence and conducting cross-examination. *See Curry v. Secretary*, 665 F. App'x 766, 767 (11th Cir. 2016). In short, "[t]he key [to exceptional circumstances] is whether the pro se litigant needs help in presenting the essential merits of his or her position to the court." *Delguidice,* 679 F. App'x at 946.

[6] Plaintiff further asserts that, as a *pro se* litigant, he is overwhelmed by the sheer number of filings ("over 80 documents"), as well as the presence of "no less than seven attorneys." However, following dismissal of the claims against Defendants Nelson, Sachdiva, Johnson, Gramiak, and Georgia Department of Corrections (*see* [Doc. 22]), only three defense attorneys remain. Furthermore, Plaintiff himself, as one of four parties remaining in the suit, has filed 40 of the 76 numbered docket entries. Thus, the Court finds it difficult to sympathize with these assertions.

Moreover, Plaintiff's incarceration does not unduly impede his ability to investigate his case, as the claims are "based on incidents personally experienced by Plaintiff." *McCall v. Cook*, 495 F. App'x 29, 31 (11th Cir. 2012).

Plaintiff's claims—that Defendants denied him adequate medical and dental treatment—are "relatively straightforward, involving incidents of which [Plaintiff] had first-hand knowledge," and thus do not necessitate professional legal help. *Sims*, 403 F. App'x at 414; *see also Wallace v. Sheriff*, 518 F. App'x 621 (11th Cir. 2013) (holding that a prisoner's claims of deliberate indifference to serious medical needs did not present novel or complex issues justifying appointment of counsel). While the evidence of Plaintiff's claims may well "consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination," this factor alone does not justify appointment of counsel. *Curry v. Secretary*, 665 F. App'x 766, 767-68 (11th Cir. 2016). Indeed, when "the dispositive issue in the case" involves whether a prisoner exhausted administrative remedies prior to filing suit, a district court is well within its rights to refuse appointment of counsel. *Id.* Such is the case here, since a central conflict between Plaintiff and Defendants Harper and Hollins involves exhaustion. [Doc. 25, at 3-9; Doc. 44, at 2-6; Doc. 46, at 1-5; Doc. 49, at 6-9].

Finally, while attorney assistance would undoubtedly benefit Plaintiff's case, this is true of all *pro se* litigants and does not warrant appointment of counsel. *See Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). Accordingly, the Court finds that Plaintiff's

5

Objection [Doc. 76] as to the issue of appointment of counsel fails to overcome the Magistrate Judge's reasoning, and the United States Magistrate Judge appropriately denied Plaintiff's motions to appoint counsel [Doc. 33, 62]. [Doc. 72, at 4].

### B. Plaintiff's Motion to Declare Georgia DOC SOP Unconstitutional [Doc. 63]

As to Plaintiff's Objection [Doc. 76] to the Magistrate Judge's denial of Plaintiff's motion to declare a Georgia DOC SOP unconstitutional, the Court agrees with the United States Magistrate Judge's Order denying this motion. [Doc. 72, at 6]. Plaintiff contends that SOP 227.06, which grants indigent prisoners five first class stamps per week for privileged correspondence, impedes his constitutional right of access to the courts and "places the Plaintiff in jeopardy."[7] Supporting this contention, Plaintiff states that on January 10, 2018, he attempted to mail a reply brief regarding this § 1983 action, but a mailroom officer stated that Plaintiff had exhausted his supply of indigent postage. [Doc. 63-1, at 1]. Plaintiff was nevertheless able to borrow the requisite postage and mail his filing. [Doc. 70, at 3]. While Plaintiff cites to relevant caselaw regarding the right of access to the courts, his arguments miss the mark. [Doc. 66, at 2-3].

---

[7] In his Motion [Doc. 63], Plaintiff includes the relevant portion of the SOP but conveniently inserts an ellipsis regarding the weekly allocation of indigent postage, writing "Indigent inmates . . . are allowed to mail privileged correspondence until five (5) first class stamps . . . are expended." [Doc. 63, at 2]. The actual SOP reads "Indigent inmates/probationers are allowed to mail privileged correspondence UNTIL FIVE (5) FIRST CLASS STAMPS PER WEEK ARE EXPENDED." Georgia Department of Corrections Standard Operating Procedure 227.06 (IIB04-0001) (VI)(K)(3)(c). http://www.dcor.state.ga.us/content/227-Policy-Facilities-Conditions-of-Confinement (capitalization in original). In a spirit of generosity, the Court assumes that Plaintiff's omission was a good faith error and not an intentional obfuscation. Nevertheless, the weekly distribution of indigent stamps certainly does not enhance Plaintiff's argument.

Prisoners have a constitutional right of adequate, effective, and meaningful access to the courts; as such, "indigent inmates must be provided at state expense with . . . stamps to mail [legal documents]." *Bounds v. Smith*, 430 U.S. 817, 821-22, 824-25 (1977). While the right to access the courts entitles indigent prisoners to *some* free stamps, it does not require "unlimited free postage." *Hoppins v. Wallace*, 751 F.2d 1161, 1162. More specifically, the Eleventh Circuit has held that prison policies granting indigent inmates a handful of stamps per week do not impede inmates' constitutional right of access to the courts. *Id.* ("The district court did not err in holding that the furnishing of two free stamps a week to indigent prisoners is . . . adequate to allow exercise of the right to access the courts."); *see also Shabazz v. Barrow*, No. 7:05-cv-46 (HL)., 2007 WL 121139, at *2 (M.D. Ga. Jan. 11, 2007) ("Georgia's policy of providing five stamps on a weekly basis for legal mail . . . will also pass constitutional muster."). Settled law thus reveals the constitutionality of SOP 227.06.

To state a cognizable access-to-the-courts claim, moreover, a plaintiff must suffer "actual injury" such that the alleged impediment "hindered his effort to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 349, 351 (1996). While Plaintiff claims he suffered an actual injury because the SOP impeded his ability to file legal documents, the record shows otherwise. In fact, between January 10 and February 1, 2018, Plaintiff mailed multiple documents, including his Motion [Doc. 63] to declare the SOP unconstitutional.

7

[Docs. 62, 63, 66].[8] Regardless of how Plaintiff was able to obtain postage, it is clear that his advocacy was unaffected and he suffered no tangible injury. Accordingly, the Court finds that Plaintiff's Objection [Doc. 76] as to the issue of SOP 227.06's constitutionality fails to overcome the Magistrate Judge's reasoning, and the United States Magistrate Judge appropriately denied Plaintiff's motion to declare the SOP unconstitutional [Doc. 63]. [Doc. 72, at 6].

### C. Plaintiff's Discovery Motions [Docs. 31, 32, 59]

Defendants Harper and Hollins filed a Motion to Stay Discovery [Doc. 26], which the Court granted via text-only order [Doc. 28] on September 5, 2017. Thereafter, Plaintiff filed three motions relating to discovery: a motion listing assorted "document demands" [Doc. 31], a "Motion for Medical and Dental Records" [Doc. 32], and a motion requesting that his medical records "[b]e [s]ubmitted to the United States District Court for [s]afekeeping" [Doc. 59].

Plaintiff may not file motions requesting or attempting to compel discovery while discovery is stayed. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("If a *pro se* litigant ignores a discovery order, he is and should be subject to sanctions like any other litigant."). Because of Plaintiff's *pro se* status, the Court assumes that his failure to comply

---

[8] Additionally, per the SOP, Plaintiff should have been provided his weekly allotment of five stamps the following Monday, January 15, 2018, rather than February 1, 2018. The prison grievance system, and not this Court, is best situated to address any failure of mailroom officers to comply with SOP 227.06.

8

with the order staying discovery was an honest mistake, not a willful violation, and declines to impose sanctions. *See Baker v. Welker*, 438 F. App'x 852, 854 (11th Cir. 2011) (upholding the trial court's decision not to impose sanctions because "[d]istrict courts enjoy broad discretion over the management of discovery"); *In re Southeast Banking Corp.*, 204 F.3d 1322, 1332 (11th Cir. 2000) (quoting *Malautea v. Suzuki Motor Corp.*, 987 F.2d 1536, 1542 (11th Cir. 1993) ("a finding of willfulness is inappropriate where a litigant's 'violation of a discovery order is caused by simple negligence, misunderstanding, or inability to comply' "). Notwithstanding Plaintiff's Objection [Doc. 76], the Court finds that the United States Magistrate Judge appropriately denied Plaintiff's various discovery[9] motions [Doc. 31, 32, 59]. [Doc. 72, at 4].

## II.     Motions Regarding Defendant Utley's Default [Docs. 48, 52, 56]

In the Order and Recommendation [Doc. 72], the Magistrate Judge granted Defendant Utley's Motion to Set Aside Default [Doc. 55], granted Plaintiff's "Motions for Claims Against Defendant Utley to Go Forward" [Docs. 48, 52], and denied Plaintiff's Motion for Default Judgment [Doc. 56]. Plaintiff objects, arguing that "Defendant Utley showed deliberate indifference to the documents filed". [Doc. 76, at 7]. Notwithstanding

---

[9] The Court also takes this opportunity to dispel any lingering misunderstanding regarding discovery and reiterate that discovery is not filed with the Court, but rather sent directly to opposing counsel. *See* Local Rule M.D. Ga. 5.1; Notice of Deficiency entered on September 29, 2017, as to [Doc. 38]. Furthermore, the Court reminds Plaintiff that, pursuant to both local and federal rules, he must confer in good faith with Defendants before seeking or attempting to compel discovery. *See* Fed. R. Civ. P. 26(d)(1), 37(a)(1); Local Rule M.D. Ga. 37.

9

this weak contention, the legal standard for opening a default entry clearly favors the Magistrate Judge's ruling.

Federal Rule of Civil Procedure 55 provides that a clerk must enter a party's default when the party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). However, the Eleventh Circuit generally views defaults with disfavor, and "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c); *see Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244-45 (11th Cir. 2015). "Good cause" is a mutable standard encompassing factors such as 1) whether the default was willful, 2) whether the defaulting party would have a meritorious defense, and 3) whether setting aside the default would result in prejudice to the opposing party. *Annon Consulting, Inc. v. BioNitrogen HoldingsCorp.*, 650 F. App'x 729, 732 (11th Cir. 2016); *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).

In this case, good cause exists to open the entry of Defendant Utley's default. First, the record shows that Defendant Utley's default was not willful. Defendant Utley avers that, while he met with a U.S. Marshal and signed a form concerning Plaintiff's dental problems, he mistakenly believed that the paperwork related to the prison's internal grievance process. [Doc. 55-1, at 3-4]. Defendant Utley does not recall receiving a complaint, service papers, or any other indication that Plaintiff had filed a civil suit against him. *Id*. Upon learning of the present legal action, Defendant Utley promptly

moved to set aside default. [Doc. 55]. Next, in his Answer, Defendant Utley asserts a series of colorable defenses to Plaintiff's claims. [Doc. 73, at 1-3]. Finally, setting aside the default is not unduly prejudicial towards Plaintiff. In his Objection [Doc. 76] to the Magistrate Judge's findings, Plaintiff fails to allege any specific prejudice, such as a loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion, that would result from the opening of default. *See Sherrard v. Macy's Syst. & Tech., Inc.*, 724 F. App'x 736, 736 (11th Cir. 2018); [Doc. 76, at 6-8]. Good cause exists to open the default entry; accordingly, the Court finds that Plaintiff's Objection [Doc. 76] fails to overcome the Magistrate Judge's reasoning, and the United States Magistrate Judge's ruling to open default was proper. [Doc. 72, at 8].

### III. Defendants Harper and Hollins' Motion to Dismiss [Doc. 25]

The Magistrate Judge recommended that the Court grant Defendants Harper and Hollins' Motion to Dismiss [Doc. 25] because Plaintiff failed to exhaust his administrative remedies prior to filing suit. [Doc. 72, at 8-12]. For the reasons that follow, the Court agrees.

#### A. The Exhaustion Standard

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The

11

PLRA requires "proper exhaustion," or actual compliance with the procedural rules and deadlines within the applicable prison grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006); *see also Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("To properly exhaust, a prisoner must 'comply with prison grievance procedures.'"). In other words, when a state prison network provides a grievance procedure, as Georgia's does here, a prisoner must submit a formal grievance and pursue the grievance process to completion *before* filing a § 1983 lawsuit. [10] *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005). Affording corrections officials valuable "time and opportunity to address complaints internally," the PLRA's exhaustion requirement curbs unnecessary judicial interference in prison administration. *Woodford*, 548 U.S. at 93.

According to the plain text of the PLRA, "a remedy must be 'available' before a prisoner is required to exhaust it." *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (quoting *Johnson*, 418 F.3d at 1155). Administrative remedies are "unavailable" in several scenarios, including "when (despite what regulations or guidance materials may promise) they operate as a simple dead end, with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016); *see also Pavao*, 679 F. App'x at 823. Thus, when the "facts on the ground demonstrate that no

---

[10] Courts examine a plaintiff's exhaustion at the time of filing suit. *See Smith v. Terry*, 491 F. App'x 81, 83-84 (11th Cir. 2012) ("The only facts pertinent to whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint.").

such potential for relief exists," an inmate is not required to exhaust the administrative remedy. *Ross*, 136 S.Ct. at 1859. The Supreme Court has recognized, however, that given prisons' strong incentives to maintain workable grievance procedures, circumstances in which an administrative remedy is "unavailable" will not often arise. *Id*.

A "two-step process" governs motions to dismiss for failure to exhaust administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the Court examines the factual allegations in Defendants' Motion to Dismiss and those in Plaintiff's Response, and if they conflict, the Court must take Plaintiff's version of the facts as true. *Id.* If, at this stage, it is clear that Plaintiff failed to exhaust his administrative remedies, the Court must dismiss the Complaint. *Id.* If, however, the Complaint survives this first step, the Court then proceeds to make specific findings in order to resolve factual disputes related to exhaustion.[11] *Id.* At this second stage, Defendants bear the burden of proof. *Id.*

**B. Plaintiff's Failure to Exhaust**

The first step of the exhaustion analysis does not necessitate dismissal of Plaintiff's claims against Defendants Harper and Hollins. *See id.* In their Motion to Dismiss, Defendants argue that Plaintiff failed to fully utilize the established GDOC grievance

---

[11] In the Eleventh Circuit, a failure-to-exhaust defense is treated, like a defense for lack of jurisdiction, as a matter of abatement that does not reach a claim's merits. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). Accordingly, courts ruling on a motion to dismiss may use evidence from outside the pleadings to resolve factual disputes over a plaintiff's failure to exhaust administrative remedies. *See id.* at 1376.

procedure with regards to his deliberate indifference claims. [Doc. 25-1, at 4-9]. Plaintiff responds that, while he did file a grievance, the grievance procedure is a futile formality that provides no remedy. [Doc. 44, at 2-6]. Taking the Plaintiff's version of the facts as true, the Court cannot dismiss Plaintiff's claims for lack of exhaustion at this initial step. *See Turner*, 541 F.3d at 1082.

However, proceeding to the second step of the exhaustion framework, the Court makes the following factual findings and determines that Plaintiff failed to exhaust his administrative remedies. *See id.*

Dooly State Prison adheres to the GA DOC's grievance process, wherein inmates "may file a grievance about any condition, policy, procedure, or action or lack thereof that affects the offender personally," aside from a few non-grievable issues such as parole decisions and institutional transfers. [Doc. 25-2, at 4]. Aggrieved inmates submit their concerns through a two-step grievance procedure. *Id.* First, the inmate must file an original grievance within ten days of the relevant incident. *Id.* at 4-5. The warden has 40 days in which to respond to original grievances. *Id.* at 5. Next, upon receiving the warden's decision, the inmate may file a Central Office Appeal, to which the Commissioner must respond within 100 calendar days. *Id.* at 5-6.

Plaintiff filed grievance 226345 on August 24, 2016, complaining of prison staff's "deliberate indifference" to his urgent medical and dental needs. [Doc. 25-2, at 31]. The Warden denied this grievance, and on September 21, Plaintiff appealed the denial. [Doc.

25-2, at 33-34]. On October 17, a mere 20 days after filing his appeal and well before the 100-day appellate review period lapsed, Plaintiff filed this § 1983 action. [Doc. 1]. Because Plaintiff submitted his Complaint [Doc. 1] while his grievance appeal was still pending, he failed to exhaust his administrative remedies prior to filing suit.[12] *See Smith*, 491 F. App'x at 83-84 (holding that a plaintiff who filed a § 1983 action while his grievance appeal was still pending had not exhausted his administrative remedies).

In his Objections [Doc. 76], Plaintiff contends that the prison grievance process was not "available" to him as a remedy because corrections officials "have never approved an inmate grievance involving medical treatment at Dooly State Prison." [Doc. 76, at 10, 11]. Given this reality, Plaintiff argues, the grievance procedure "operates as a simple dead-end" and need not be exhausted as a remedy prior to filing suit. However, Plaintiff tenders no factual support for this conclusory, conjectural allegation, and "the plain face of his Complaint belies any such contention." *Daker v. Dozier*, No. 6:17-cv-110, 2017 WL 4448234, slip op. at *9 (S.D. Ga. Oct. 5, 2017); [Doc. 1, at 3].

---

[12] Plaintiff correctly states that an inmate exhausts his administrative remedies by "pursu[ing] the grievance procedure to its final stage and receiv[ing] an adverse decision on the merits," thus "alerting the state and inviting corrective action." *Whatley*, 802 F.3d at 1215; *Ricardo v. Rausch*, 375 F.3d 521, 524 (11th Cir. 2004); [Doc. 76, at 10, 11]. These assertions, while correct, do nothing to help Plaintiff's claims, since Plaintiff *failed* to pursue the grievance procedure to completion when he filed the present lawsuit while his grievance appeal was still pending. Thus, Plaintiff inappropriately sought a federal forum for his claims before affording the Commissioner an adequate opportunity to correct the alleged deficiencies.

Plaintiff also contends that even if he did file the instant action too soon, "it caused no harm to the defendants." [Doc. 76, at 12]. This argument is irrelevant. The PLRA's exhaustion requirements were enacted to eliminate unwarranted judicial interference in prison administration and improve the quality of prisoner suits, not to minimize prejudice to the opposing party. *Woodford*, 548 U.S. at 93-94.

Logic follows that, if Plaintiff sincerely believed that the grievance process was an unavailable dead-end remedy, he would not have filed a grievance at all, much less appealed his grievance's denial. As in *Daker*, Plaintiff initiated the grievance procedure but failed to pursue this remedy to completion, filing suit prematurely. *See* 2017 WL 4448234 at *9. "Given that Plaintiff failed to take basic steps to pursue [the prison's] administrative remedies, he cannot now complain that that [sic] those remedies were unavailable to him." *Id.* Because Plaintiff's remaining arguments are equally unavailing,[13] the Court finds that Plaintiff failed to exhaust his administrative remedies. Therefore, the Court **ADOPTS** the Magistrate Judge's Recommendation and **GRANTS** Defendants Harper and Hollins' Motion to Dismiss [Doc. 25].

---

[13] Plaintiff relies on *Whatley* for the proposition that "a procedural default does not bar consideration of a federal claim." *Whatley*, 802 F.3d at 1216 (Vinson, J., concurring specially). This quotation, plucked from its relevant context, is inapplicable. In his Objections, Plaintiff seems to argue that his failure to pursue administrative remedies before filing the instant action is a "procedural default" that should not affect the viability of his claims. *Id.*; [Doc. 76, at 11]. However, *Whatley* merely held that "district courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself has declined to enforce the rule." *Id.* at 1215. In the present matter, the Court does no such thing. The Court finds that Plaintiff failed to exhaust his administrative remedies because he filed suit while his grievance was still under appellate review, not because his grievance itself contained a "procedural flaw" by including "issues not raised in an informal grievance." *See id.* at 1214.

Plaintiff also cites *Patsy v. Board*, stating that "the exhaustion of state remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Board*, 457 U.S. 496, 516 (1982); [Doc. 76, at 12]. However, *Patsy*, which involved a non-prisoner employment discrimination suit, did not disturb the "narrow, detailed exception to the no-exhaustion rule" that "require[s] exhaustion in certain § 1983 actions brought by adult prisoners." 457 U.S. at 515.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Order and Recommendation [Doc. 72] and **MAKES IT THE ORDER OF THE COURT**. Thus, the Court **GRANTS** Defendants Harper and Hollins' Motion to Dismiss [Doc. 25]. Any and all future filings should not include terminated defendants.

**SO ORDERED**, this 29th day of June, 2018.

**S/ Tilman E. Self, III**
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
